NO. 7988

STATE OF LOUISIANA

ANTHONY BERTUCCI

COURT OF APPEAL

VS

N. O. RAILWAY & LIGHT CO.

PARISH OF ORLEANS.

## OPINION.

By his Honor John St. Paul.

Plaintiff sues for the loss of a mule, killed in a collision between a street car and a wagon driven by his son.

The son testifies; "When I hit Broadway and Jeanette, I looked towards the river; I seen a car coming about three quarters of a block away, and thought that I had time to make it. I was going across the track and (again) looked towards the car, and it was coming at full speed; and I seen I couldn't make it at the speed it was coming- - for me to get clear across - - and I tried to swing my mules off the track; and at that time the car had done smashed into me. Question; When you noticed the high speed of the car, how far on the track had your mules gotten? Answer; Just the forelegs on the track, and I tried to swing them over. And again; My mules were walking. Question; And you thought you had time to cross the tracks before the car could get there? Answer; I would have, if the car was going slow enough. Question; You could stop your mules pretty short while they were walking? Answer; I didn't try to stop them until I seen the car was going to overtake me."

### I.

Quid multa? The law applicable to such a state of facts may be briefly stated as follows;

I. The recognized rule is that before crossing a railway track a person should stop, look and listen; and it will not do to substitute therfor a rule to the effect that, being a distance from a crossing towards which he and an electric or steam car are travelling, he may then form an opinion as to which of the two will get there first, and acting upon that opinion, essay the crossing without giving himself further concern upon the subject. Heebe vs R. R. Co, 110 La 970; Mc Shane vs Ry Co, 137 La 832; Mohren vs Ry Co, 147 La (84 Southern 897).

2. Hence, the driver of a vehicle, who sees an electric car approaching, even as much as 300 feet away, and yet without looking again drives heedlessly upon the track, and thus comes into collision with the moving car, is guilty of such negligence as to bar a recovery, in the absence of evidence showing with legal certainty that the motorman was operating his car at a dangerous rate of speed; or, by the exercise of ordinary care after the discovery of the danger, could have avoided the collision. Marston vs Traction Co, 140 La 18.

II.

Accordingly the only questions requiring consideration are these, I. Does the evidence show with legal certainty that the car was being operated at a dangerous rate of speed? or, 2. Does the evidnce show with legal certainty that by the exercise of ordinary care after the discovery of the

440

danger, the motorman could have avoided the collision?

As to these the only witnesses who threw any light thereon are the operators of the car, and a witness for plaintiff named Dragon; the driver of the wagon being manifestly too busy with trying to save his team, and indeed his own life, to observe closely. He does say indeed that when he saw the car the second time it was still half a block away and coming very fast, and that then his mules had all four feet on the track, "the wholé mule was on the track"; but he had previously stated that when he first saw the car, three quarters of a block away, the dash board on which he sat was at the curb, and the wagon itself had not yet reached the roadway of the cross (double-roadway) street on which the car ran. So that this part of the testimony not only conflicts with his first statement, but is self contradictory. For if his mules were wholly upon the track, then his dashboard must have been right on the track; and in that case the car would have moved only a quarter of a block whilst his walking mules were dragging the dash board from the curb to the track. And if that be so and his mules were fully on the track, then a mere touch of the whip would have taken mules, driver and wagon out of the path of the car before the latter could, at that slow rate of speed, reach the point of crossing. And in

441

that case he would have resorted to the whip to urge his team forward, instead of attempting to "swing" them; which under those circumstances would bring him back into, instead of out of, the path of the car.

The witness Dragon testifies that he first saw the wagon when the mules were already "on the track", and they were then walking. The car was then "half a block away x x x coming pretty fast", and the motorman was trying to stop the car; but it seemed that "his brake would not take". The driver "tried to get off the track, after he saw he could not get over it"; and the car went one quarter or one half a block after striking the mule. He does not explain what he means by the mules being "on the track", but as he also saw the mules swung instead of urged forward, we take this to mean that their front feet were on the track.

The conductor testified that he dropped a passenger one block away; that his attention was drawn by the ringing of the gong and the motorman's motions in applying the brake; that the car was then near the intersection and the mules ten or fifteen feet from the track "coming pretty fast"; that the car was going at two-thirds speed, about 8 miles an hour, when his attention was first aroused; and that the car went 19 steps, about 30 or 40 feet, after striking the mule.

The motorman testified that his car was going at two-thirds speed, and when he reached about thirty feet from the crossing he saw the wagon coming out "going as fast as the mules could go". He was ringing his bell, and did all he could do to stop the car; that is to say "I started to apply the brakes. I had been ringing the gong, but he still came on; and the left mule struck the stanchion post, bent the brake, and knocked me to the left side of the car." That the mules were not on the track at all but ran into the car; that the car stopped 19 steps beyond the point of collision; that the car could not have been stopped in less than 80 feet.

### III.

Therefore, on the whole, the testimony does not show with legal certainty (to say the least) either that the car was being operated at a dangerous rate of speed, or that by the exercise of ordinary care after the discovery of the danger, the motorman could have avoided the collision?

The fact is that plaintiff's driver did just what he said he did at the opening of his testimony; he saw, or thought he saw, that he could cross ahead of the approaching car, and tried it but missed; and fortunately missed

by a margin just sufficient to save his own life.

The judgment appealed from is therefore reversed, and it is now ordered that the plaintiff's demand be rejected at his cost in both courts.

Judgment Reversed.

New Orleans La, May 2nd, 1921.